**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| DEANNA S. WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4: 23 CV 180 RLW |
| | ) |
| MARTIN J. OMALLEY,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Deanna S. Wilson for disability insurance benefits (DIB) under Title II of the Social Security Act. The Court has reviewed the filings and the administrative record as a whole, which includes the hearing transcript and medical evidence. For the reasons set forth below, the decision of the Commissioner is affirmed.

## I. BACKGROUND

Plaintiff was born on February 8, 1962, and filed her application for DIB on November 26, 2020. (Tr. 22, 1584.) She alleged she became disabled on September 6,

---

[1] Martin J. O'Malley is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley shall be substituted for Acting Commissioner Kilolo Kijakazi as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2020.  (Tr. 12, 158-59.)  She alleged disability due to lumbar discectomy, degenerative disc disease, low back pain, rheumatoid arthritis, chronic joint pain, hypertension, hyperlipidemia, fibromyalgia, and spinal stenosis.  (Tr. 192.)  Her claims were denied initially, and on reconsideration, and she requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 79-83, 90-99, 100-101.)

On January 10, 2022, following a hearing, the ALJ concluded that plaintiff was not disabled.  (Tr. 9-28.)  The Appeals Council denied review.  (Tr. 1-6.)   Accordingly, the ALJ's decision became the final decision of the Commissioner subject to judicial review by this Court under 42 U.S.C. § 405(g).

## II.  ADMINISTRATIVE RECORD

The following is a summary of plaintiff's medical and other history relevant to her appeal.

**Pre-Onset Date**

A June 19, 2020 MRI of the lumbar spine revealed degenerative disk disease throughout the lumbar spine, more advanced at the L4-5 and L5-S1 levels, where there was significant loss of disk space height. (Tr. 261.)

On August 25, 2020, Plaintiff reported progressively worsening right-sided lower back pain and right lower extremity pain.  James Lu, M.D., neurosurgeon, reviewed the June 19, 2020 MRI and recommended a trial of thoracic dorsal column stimulation under

a pain management provider. Dr. Lu hoped the stimulation would provide better control of her chronic pain symptoms.  (Tr. 257-62.)

On September 5, 2020, Plaintiff was seen in the emergency room (ER) for lower back pain radiating down her right leg. Cortisone injections two months earlier had provided little relief and Norco had not been effective. Plaintiff felt better after she was administered Toradol, Norflex, and Norco.  (Tr. 325-29.)

**Post-Onset Date**

Plaintiff was hospitalized from September 6-12, 2020, for back pain.  An MRI revealed right L5 disk herniation with an inferiorly migrated fragment affecting the right L5 nerve root.  On September 11, she underwent a right L4-5 microdiscectomy, a surgical procedure  to remove part or all of a bulging or damaged (herniated) disc in the lower spine. On September 12 she was doing well post-op.  She reported her pain was "vastly reduced" and she was walking around the room, "very excited about the outcome."  (Tr. 335.)

On October 19, 2020, Plaintiff was seen in the ER reporting lower back pain on the right side, radiating to the right hip and into the right groin.  She had been doing well since surgery and was looking forward to returning to work in the next week.  She had been active that weekend, going to a pumpkin patch and soccer game. (Tr. 374.)  October 20, 2020 x-rays of her lumbar spine revealed multilevel disk space height loss and endplate osseous spurring and lumbar spondylosis with moderate-to-severe disk space height loss at L4-5 and L5-S1.  (Tr. 383.)

A November 10, 2020 MRI of her lumbar spine revealed interval postoperative changes to the right of midline L4-5, mild-to-moderate narrowing of the right L4 foramen secondary to residual disk spur complex, and stable residual central protrusion L5-S1. (Tr. 395-396.)

On November 12, 2020, Stanley Martin, M.D., Plaintiff's neurosurgeon, wrote that he was not enthusiastic about further lumbar spine surgery, because he thought the risks outweighed the potential benefits. He noted Plaintiff "had little in the way of neurologic deficits and there [was] nothing to suggest infection or instability." (Tr. 509.) He believed her fibromyalgia, chronic low back, and some right leg pain may be slowing her recovery. They discussed indications for further lumbar spine surgery at some length. Dr. Martin ordered physical therapy and advised Plaintiff to try to wean from Percocet, because he would not refill it on a long-term basis. (Tr. 509.)

On December 21, 2020, Plaintiff reported complete relief of her back pain status-post surgery. However, she then began experiencing new pain in the low back and right lower extremity, radiating from her right buttock down the lateral thigh to the lateral calf to the right ankle. Her leg pain was "a bit worse" than her back pain and was worse first thing in the morning and eased up after several hours. She reported spasms in her buttock in the morning when she wakes. She tried icing, heat, TENS, and Flexeril. The pain had been better in the past three days, and she had not needed her pain medication. However, she still felt aching in her right buttock, lateral right hip and thigh, and paresthesias (pins and needles) in her right calf. (Tr. 608.)

- 4 -

On physical examination, Christopher Patton, M.D., pain management expert, observed Plaintiff had an antalgic gait (limp) using a cane; limited range of motion of the lumbar spine in all planes, 4/5 motor strength in bilateral hip extension and hip abduction; diffusely tender over the right lumbar paraspinals; and tenderness to palpation in the right lateral hip and right thigh.  She had 5/5 strength in her lower extremities and full range of motion in her ankles, knees, and hips.  An MRI revealed L4-5 advanced disk space height loss; L4 bilateral foramen show moderate narrowing, secondary to asymmetric disk spur complex; L5-S1 disk space height loss with broad spur complex, greatest at right paracentral, stable; and L5 left foraminal stenosis (narrowing) was mild-to-moderate.  Dr. Patton confirmed that the new MRI showed some remaining narrowing status-post L4-5 microdiscectomy. Plaintiff was doing a little better recently.  Dr. Patton diagnosed lumbar radiculitis, epidural fibrosis, piriformis syndrome of right side, and spasm of muscle. Plaintiff declined additional epidural steroid injections. (Tr. 611-13.)

 On December 21, 2020, Plaintiff completed Form SSA 3373.  She stated that she reads; however, sometimes, she finds it difficult to concentrate secondary to pain.  She reported that she can pay attention, as long as she is not interrupted by pain.  She checked a box indicating that she finished what she started.  She indicated she had no problems following written and spoken instructions.  (Tr. 216-17.)

On January 30, 2021, state medical agency medical consultant Michael O'Day, D.O., reviewed the record.  He documented the evidence he reviewed, the most recent evidence being from December 30, 2020.  (Tr. 66.)  He opined that Plaintiff would be able

- 5 -

to perform sedentary work "12 Months After Onset: 09/05/2021" and that "Claimant's allegations [were] generally consistent [with] totality of medical evidence." (Tr. 65-67.)

On February 4, 2021, Dion Miranda, D.O., observed Plaintiff had an abnormal gait and ambulated with a cane. (Tr. 679.)

On February 18, 2021, Plaintiff reported continued pain in her low back and right lower extremity, radiating from the right buttock down the lateral thigh to the lateral calf. Plaintiff reported persistent tingling in her right lateral calf and persistent numbness in the right toes. Her pain had improved.  She had good strength in all 4 extremities except for a trace of weakness in her right extensor tendon and intact pinprick sensation in both lower extremities.  Dr. Martin noted little in the way of neurologic deficits and there was nothing to suggest infection or other postoperative complication.  Dr. Martin observed that Plaintiff's gait remained a bit antalgic on the right.  He did not see a satisfactory explanation for the persistent pain on the MRI from a few months ago and continued to believe that risks of additional surgery outweighed potential benefits. Plaintiff would continue to treat with her primary care physician for medication adjustments. (Tr. 696.)

In March 2021, state agency psychological consultant Gretchen Brandhorst, Ph.D. opined that Plaintiff had no limitations in her ability to understand, remember, or apply information; in interacting with others; in her ability to concentrate, persist, or maintain pace; and in adapting and managing herself.  (Tr. 73.)

On March 22, 2021, Plaintiff reported that her spinal pain with radiculopathy to the right hip and thigh had been controlled following her microdiscectomy until October 2020,

when she developed severe right leg pain and inability to walk.   She reported continued pain, right hip symptoms, and muscle spasms, and that her pain was intermittent and somewhat controlled with medications as needed.  She reported difficulty sitting, standing, and walking. She used a cane. She wanted a second opinion. On physical examination, Elizabeth Gordon, FNP, observed right hip tenderness.  (Tr. 739-40.)

On March 23, 2021, state agency medical consultant Charlette Endsley, M.D., reviewed the evidence.  She  opined that Plaintiff would be able to perform sedentary work "12 Months After Onset: 09/05/2021."   (Tr. 74.)  Dr. Endsley documented the evidence she reviewed; the most recent evidence reviewed was dated February 18, 2021. (Tr. 76) Dr. Endsley opined Plaintiff's allegations were  generally consistent with the  totality of the medical evidence but were  still resolving from back surgery.  She opined Plaintiff's symptoms should minimize with continued treatment and healing time.  (Tr. 74-76.)

From April 29 to October 21, 2021, Plaintiff saw pain specialist Vivek Kumar Manchanda, M.D. on a regular basis for steroid injections and management of her pain medications.  (Tr. 710-15, 717-18, 723, 726-27, 730-31, 735.)

On July 23, 2021, Plaintiff completed a Claimant's Recent Medical Treatment form. She stated that she had damage to the sciatic nerve, and that it was inflamed and irritated. She stated muscle spasms also cause irritation to the nerve, creating a "vicious cycle."  She stated she had another bulging disk but that the risk of additional surgery outweighed the benefits and that she would treat it conservatively with medication and other options in the future.  (Tr. 247.)

- 7 -

On July 29, 2021, Plaintiff reported to Dr. Manchanda that she had lost her job because she could not function at work because of her back pain and that she was losing her house because she had no money and was living off her 401K.  Dr. Miranda noted that she ambulated with a cane.  He noted she had tenderness in her right trochanteric bursa and that she appeared depressed. (Tr. 741-46.)  X-rays of Plaintiff's right hip revealed no acute osseous abnormality. Degenerative disk disease was identified at L4-5 and L5-S1.  (Tr. 763.)

On September 22, 2021, Plaintiff reported pain in her mid and low-back, and right lateral hip, radiating to her right lower extremity. She reported 95% pain relief following injections on September 2, 2021, until eight days earlier when she was moving out of her house.  Her pain on September 22 was 10/10 in her low back with radiculopathy to the anterior right lower extremity. Muscle pain and neuropathy were her most bothersome symptoms.  (772-73.)

On October 21, 2021, Plaintiff's pain was 6/10 in the low back with radiculopathy to the anterior right lower extremity and right greater trochanteric bursa area. (764-69.)

## ALJ HEARING

On November 2, 2021, Plaintiff appeared and testified by telephone to the following before an ALJ.  (Tr. 31.)  She is disabled from nerve pain that runs from her lower back into her right buttock and sometimes down into her leg, depending on activity. She always experiences lower back pain.  (Tr. 44.)  Sitting for more than an hour will cause pain.  (Tr.

- 8 -

45.) She cannot stand much longer than 20 or 25 minutes without having to sit down because of pain. (Tr. 45.)  She needs a cane to walk to her neighbor's driveway and back, which takes about 10 or 15 minutes, as well as any other time she leaves the house or has to walk any distance, such as the doctor's office. (Tr. 45-46.)  When she was seen in the ER in September 2020, the ER physician advised her to use a "cane to help with the stability."  (Tr. 46.)

A vocational expert also testified to the following at the hearing.  Plaintiff is unable to perform her past relevant work.  However, a hypothetical individual with Plaintiff's age, education, past work experience, and limitations that would become plaintiff's RFC has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy, such as front desk receptionist or monitor technician.  (Tr. 51-53.)

## DECISION OF THE ALJ

On January 10, 2022, the ALJ issued a decision finding that plaintiff was not disabled.  (Tr. 9-28.)  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability on September 6, 2020. At step two, the ALJ found that Plaintiff had the severe medically determinable impairments of degenerative disk disease, obesity, fibromyalgia, and trochanter bursitis . (Tr. 14-15.)  At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that meets or medically equals an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 16.)

The ALJ found that Plaintiff had the residual functional capacity (RFC)  to perform sedentary work, as defined under the regulations, except, "she can never climb ropes, ladders, or scaffolds; only occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, and crawl; and should never be exposed to unprotected heights and hazardous machinery." (Tr. 18.)  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 22.)  At step five, relying on vocational expert testimony, the ALJ found, Plaintiff had acquired work skills from past relevant work that were  transferable to other occupations with jobs existing in significant numbers in the national economy.  (Tr. 22-23.)  Accordingly, the ALJ concluded that plaintiff was not disabled under the Act.  (Tr. 28.)

## III.  LEGAL STANDARD

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001).  The "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."  Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir.

2007) (internal quotation marks and citation omitted).  "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."  Id. (internal quotation marks and citations omitted.  Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision."  Reece v. Colvin, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence."  Id. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently."  KKC ex rel. Stoner v. Colvin, 818 F.3d 364, 370 (8th Cir. 2016).

To be eligible for DIB and SSI under the Act, plaintiff must prove she is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Sec'y of Health & Hum. Servs., 955 F.2d 552, 555 (8th Cir. 1992).  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

- 11 -

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).   The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Second, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities.  If the claimant's impairment is not severe, then he is not disabled. Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1, the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 416.920(a)(4)(iii), (d).

At step four, if the claimant's impairment is severe but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the RFC to perform his or her past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i).  An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011); see also  20 C.F.R. § 416.945(a)(1). Ultimately, the claimant is responsible for providing evidence relating to his RFC, and the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the

claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

At step five, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production shifts to the Commissioner to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy. See Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. Id. At step five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016).

## IV.  DISCUSSION

Plaintiff argues the ALJ erred (1) in failing to fully and fairly develop the record; and (2) in failing to properly evaluate her residual functional capacity. The Court disagrees.

### Failure to Fully and Fairly Develop the Record

Plaintiff argues the ALJ failed to fully and fairly develop the record.  She argues the ALJ failed to obtain medical evidence that addresses her ability to function in the workplace and that supports the ALJ's RFC assessment during the entire period of disability.  She contends the ALJ instead relied on speculation from State agency medical consultants Drs. O'Day and Endsley, and as a result, they did not provide a current RFC.  She argues they provided a speculative RFC, anticipating medical improvement in the future.  She contends the ALJ should have obtained a medical opinion to determine Plaintiff's RFC after September 5, 2021, instead of basing the RFC assessment on speculation.  She complains the ALJ should have obtained a medical opinion to support the finding that she can sit at least six hours in an eight-hour workday with her combined impairments.  She argues this was reversible error that changed the outcome of the case.

An ALJ is not required to further develop a record unless a crucial issue is underdeveloped, or the available evidence does not provide an adequate basis to make an informed determination of the disability claim.  *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).  "'[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.'"  *Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019) (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).  A claimant's failure to provide evidence in support of her claimed work-related restrictions "should not be held against the ALJ" when, as here, "there *is* medical evidence that supports the ALJ's decision."  *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008).  Moreover, the Eighth Circuit does "not require that every

- 14 -

aspect of an RFC finding 'be supported by a specific medical opinion,' only that it 'be supported by some medical evidence of the claimant's ability to function in the workplace.'" *Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 518 (8th Cir. 2019) (quoting *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016)).

Here, the ALJ found that Plaintiff could perform sedentary work, except that she could never climb ropes, ladders, or scaffolds; occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, and crawl; and should never be exposed to unprotected heights and hazardous machinery.  (Tr. 18.)  In making this determination, the ALJ considered the state agency medical consultants' January and March 2021 prior administrative medical findings (PAMFs) stating that by September 2021, Plaintiff would be able to perform sedentary work, except that she could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and occasionally stoop, kneel, crouch, and crawl.  (Tr. 21, 65-66, 74-75.)  The ALJ found the PAMFs persuasive, as they were supported by their medical expertise and record citations and were fairly consistent with the record as a whole, "as shown by a discussion of the evidence above." (Tr. 21.)  *See* 20 C.F.R. § 404.1520c(b)(2) (supportability and consistency are the two most important factors in evaluating medical opinions and PAMFs).  However, unlike the PAMFs, the ALJ found that greater limitations of reduced hazards and climbing were warranted based on Plaintiff's reports of pain and use of pain medication.  (Tr. 21.)

Plaintiff's argument that the state agency medical consultants' PAMFs were speculative is without merit as the ALJ did not rely solely on the PAMFs in determining

Plaintiff's RFC.   Unlike the PAMFs, the ALJ included additional hazard and climbing limitations.  (Tr. 21.)  Here, the ALJ discussed evidence from the entire relevant period. (Tr. 19-22.)  *See* 20 C.F.R. § 404.1546(c) (at the hearing level, ALJ is responsible for determining RFC).  This evidence supported the ability to perform sedentary work as articulated in the ALJ's RFC finding. (Tr. 18.)  The ALJ specifically noted that her RFC formulation took into account Plaintiff's degenerative disc disease, obesity, fibromyalgia, and trochanter bursitis.   (Tr. 21).  This is  not speculative.

Moreover, Plaintiff has not met her burden to demonstrate an inability to perform the sitting required of sedentary work.  *See Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (plaintiff's burden to prove RFC).  As to Plaintiff's citations to record evidence that she believes support additional limitations, this Court may not reweigh the evidence. *See Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022) ("[d]espite [the claimant's] dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence.").  *Austin v. Kijakazi,* 52 F.4th 723, 731 (8th Cir. 2022) ("[w]hether the ALJ should have provided *additional* limitations amounts to a disagreement over the weighing of evidence within the record, and it is not this Court's role to reweigh that evidence.").

In formulating Plaintiff's RFC, the ALJ noted that in September 2020, Plaintiff was hospitalized for worsening back pain and underwent a right L4-5 micro surgical lumbar discectomy.  (Tr. 19, 361-363.)  Following surgery, Plaintiff reported some improvement on September 22, 2020, stating that her pain was "not nearly as severe as prior to surgery." (Tr. 402.)  However, she continued to report ongoing low back pain, described as "fairly

- 16 -

mild," and numbness radiating to her right foot.  (Tr. 19, 402.)  An examination showed good strength in all extremities, except 4+/5 in the right extensor hallucis longus (EHL), and normal gait with the ability to heel and toe walk slowly.   (Tr. 19, 402.)

In October 2020, Plaintiff was seen in the ER for acute low back pain over the past three days with mild tingling in her right leg, but otherwise reported significant improvement post-surgery.  (Tr. 19, 374.)  Examinations showed normal range of motion, full 5/5 muscle strength, and intact sensation throughout, despite mild low lumbar back tenderness to palpation and markedly antalgic, though unassisted, gait.  (Tr. 19, 377, 453.) An x-ray showed lumbar spondylosis with moderate to severe disc space height loss at L4-5 and L5-S1 but maintained vertebral body heights.  (Tr. 20, 383.)

The ALJ went on to note that Plaintiff's low back and right lower extremity pain continued in November and December 2020.  (Tr. 20.)  Nonetheless, physical exams continued to show good strength throughout except trace weakness in Plaintiff's right EHL and with bilateral hip extension; intact sensation throughout except slight hypesthesia over the right foot dorsum; slightly antalgic gait; absent reflexes; and tenderness along her lateral right hip and thigh.  (Tr. 20, 483, 519, 541, 611.)  Plaintiff had limited lumbar spine range of motion in all planes, but full lower extremity range of motion.  (Tr. 20, 611.)  The ALJ noted that physical therapy records showed continued pain and muscle spasms into December 2020, but improved lower extremity strength and flexibility.  (Tr. 20, 651.)

The ALJ noted that a February 4, 2021, examination indicated Plaintiff was using a cane.  (Tr. 20, 679.)  The ALJ also noted that on February 18, 2021, Plaintiff's gait was a

bit antalgic on the right, but she had good strength except for "just a trace of weakness" in her right EHL, intact sensation to pinprick in both lower extremities, and normal reflexes. (Tr. 20, 696.)  Dr. Martin, Plaintiff's neurosurgeon, noted that she had "little in the way of neurologic deficits," and that he could find "no satisfactory explanation" for her pain on the MRI scans. (Tr. 20, 696.)  No further surgery was recommended, and Plaintiff was advised to follow-up with her primary care provider for medication adjustments.  (Tr. 20, 696.)  The ALJ noted that up to that point Plaintiff's neurosurgeon had been providing "off work" notes, although no such note was provided at this appointment.  (Tr. 20.)

The ALJ further noted that Plaintiff's back pain worsened after moving, packing, and unpacking in mid-August 2021, but with ongoing treatment, her pain level was reduced to 4-5/10.  (Tr. 20, 712.)  In October 2021, Plaintiff had tenderness to palpation at L4, L5, and over her greater trochanteric bursa, but full painless range of motion throughout, full muscle strength at 5/5 throughout, intact sensation throughout, and normal reflexes throughout, despite positive straight leg raise testing bilaterally.  (Tr. 20, 765.)  This record evidence supports the ALJ's finding that despite back issues, Plaintiff could perform sedentary work with additional postural and hazard limitations.  (Tr. 18.)

Plaintiff contends that after the state agency consultants issued their PAMFs, she was diagnosed with trochanter bursitis.  However, the ALJ considered this impairment in her RFC analysis.  *See* 20 C.F.R. § 404.1546(c) (at the hearing level, ALJ is responsible for determining RFC). Moreover, a diagnosis alone does not equate to disability, nor does it establish functional limitations.  *See Collins ex rel. Williams v. Barnhart*, 335 F.3d 726,

730-31 (8th Cir. 2003) (a diagnosis alone "has minor significance one way or the other"; the dispositive question is whether claimant's functioning in various areas was markedly impaired, not what one doctor or another labels his disorder). Here, Plaintiff has not shown that her trochanter bursitis resulted in limitations beyond sedentary work with additional limitations. (Tr. 18.) *See Buford*, 824 F.3d at 796 (plaintiff's burden to prove RFC).

The ALJ also noted that in April 2021, Plaintiff began treatment with pain management and was given injections for trochanter bursitis. (Tr. 20.) Despite right hip tenderness, tenderness to palpation at L4-L5, and positive straight leg raises bilaterally, exams showed full muscle strength, normal reflexes, intact sensation throughout, and full, painless range of motion. (Tr. 20, 735, 740.) The ALJ also noted that in late July 2021, Plaintiff was using a cane and had some continued tenderness over her right trochanteric bursa. (Tr. 20, 746.) Imaging of her right hip showed degenerative disc disease at L4-L5 and L5-S1, but no acute osseous abnormality. (Tr. 20, 763.)

The ALJ also observed that after a September 2, 2021 trochanteric bursa injection, Plaintiff had no motor or sensory deficits. (Tr. 20, 710.) On September 22, 2021, Plaintiff reported to pain management that the bursa injection provided 95% relief. (Tr. 772.) *Cf. Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (impairments reasonably controlled with treatment are not disabling). Plaintiff reported increased low back pain beginning eight days earlier but attributed this to "climbing many stairs while packing and moving to new house." (Tr. 772.) As discussed above, the ALJ also noted that an October 21, 2021 examination showed tenderness to palpation at L4, L5, and over her greater trochanteric

bursa, but full painless range of motion throughout, full muscle strength at 5/5 throughout, intact sensation throughout, and normal reflexes throughout, despite positive straight leg raises bilaterally.  (Tr. 20, 765.)  This evidence supports the ALJ's conclusion that despite trochanter bursitis, Plaintiff could perform sedentary work as set forth in the ALJ's RFC finding.  (Tr. 18.)  Finally, Plaintiff argues her diagnosis of trochanter bursitis and evidence of positive straight leg raises prevented her from performing the sitting required of sedentary work.  However, this Court may not reinterpret the evidence on review.  *See Schmitt*, 27 F.4th at 1361.

Based on the above, this Court finds no error.

**Residual Functional Capacity (RFC)**

Plaintiff next argues the ALJ failed to properly evaluate her RFC because the evidence as whole supports a finding that she is limited to unskilled or simple work secondary to pain.  She contends the RFC formulation is particularly relevant in her case because if she is limited to simple or unskilled tasks, she meets the Medical-Vocational Guidelines (GRIDs) requirements for disability.  Specifically, she notes that at step three, the ALJ attributed her difficulty completing tasks to physical rather than mental impairment.  She argues that the ALJ failed to recognize that regardless of the cause of the difficulty of completing tasks, she still has difficulty completing tasks, which interferes with her ability to perform more than simple work.  The Court disagrees.

"The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others,

and an individual's own description of his limitations." Hensley v. Colvin, 829 F.3d 926, 931-32 (8th Cir. 2016) (citation omitted). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." However, there is no requirement that an RFC finding be supported by a specific medical opinion." Id. at 932 (citation omitted). "[I]n evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." Cox v. Astrue, 495 F.3d 614, 619-20 (8th Cir. 2007) (citation omitted).

When evaluating medical opinion evidence, the ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions, including those from Plaintiff's medical sources. See 20 C.F.R. § 404.1520c(a). The regulations require the ALJ to evaluate the persuasiveness of medical opinions, and the most important factors the ALJ considers are supportability and consistency. See 20 C.F.R. § 404.1520c(b).

Here, in formulating RFC, the ALJ pointed out Plaintiff had no limitations in concentration, persistence, or pace, and her mental status examinations generally showed she was alert and oriented. (Tr. 15, 328, 355, 359, 377, 740, 746, 765.) Also, in finding that Plaintiff had no limitations in understanding, remembering, or applying information, the ALJ noted that Plaintiff's mental status examinations were generally normal, including normal memory, insight, and judgment. (Tr. 15, 355, 740, 746, 765.) Additionally, the

ALJ noted at both step three and in the RFC finding, by her own statements and actions, Plaintiff could read, write, perform personal care tasks, take medication without reminders, perform household chores, prepare meals, shop by computer, manage funds, socialize with others by phone, email, and text, finish tasks, and follow instructions.  (Tr. 15, 18, 213-217).   Although plaintiff checked a box on her Function Report indicating that she had trouble completing tasks, she also stated that she finished what she started.  (Tr. 217.)  Such evidence does not support Plaintiff's claim that she required RFC limitations to simple/unskilled work.

The ALJ also considered the PAMF of state agency psychological consultant Dr. Gretchen Brandhorst that Plaintiff had no limitation in any of the "Paragraph B" criteria, including concentrating, persisting, or maintaining pace.  (Tr. 21, 73).  The ALJ found Dr. Brandhorst's PAMF persuasive because it was supported by her own medical expertise and citations to the record.  (Tr. 21.)  The ALJ also found the PAMF consistent with the record as a whole, including Plaintiff's normal mental status examinations.  (Tr. 21).  *See* 20 C.F.R.  §  404.1520c(b)(2)  (supportability and consistency are the two most important factors in evaluating medical opinions and PAMFs).

Specifically, the ALJ cited a September 2020 examination showing that Plaintiff was alert and oriented to person, place, and time.  Her mental status was at baseline and her thought content and judgment were normal.  (Tr. 21, 355.)  The ALJ cited another examination dated September 2020, which indicated that Plaintiff had a normal attention span and good fund of knowledge.  (Tr. 21, 359.)  The ALJ also cited Plaintiff's March

- 22 -

2021 examination noting normal memory and full orientation.  (Tr. 21, 740.)  In addition, the ALJ cited an October 2021 examination, which showed that Plaintiff was alert and oriented; her cognitive function was intact; her judgment and insight were good; and her thought processes were logical and goal directed. (Tr. 21, 765).  This evidence contradicts Plaintiff's assertion that she required RFC limitations to unskilled or simple work.

In sum, the Court concludes substantial evidence supports the ALJ's RFC finding.

## VI.  CONCLUSION

For all of the reasons set forth above, the Court finds no error.  Therefore, the Court affirms the decision of the Commissioner.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

A separate judgment will accompany this Memorandum and Order.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 10th day of January, 2024.

- 23 -